```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA


SHANIQUA SUBER,                  :    CIVIL ACTION
                                 :
          v.                     :
                                 :
OFFICER JOSEPH PETERSON,         :
et al.,                          :    NO. 04-1896
```

MEMORANDUM AND ORDER

McLaughlin, J.                                           June 2, 2006

       This case involves claims by Shaniqua Suber under 42 U.S.C. § 1983 for the use of excessive force, and under state law for assault and battery. The claims arise out of Suber's arrest on November 22, 2003. Suber originally made claims against Police Officers Joseph Peterson and Angelo Troilo[1] (collectively, "the officers") and the Borough of Norristown ("the Borough"), but Troilo and the Borough were granted summary judgment on all claims against them.

       As the trial date approached in March of 2006, the parties discussed settlement. On March 10, 2006, Suber's attorneys represented to the defendants' attorney that Suber had agreed to accept the defendants' settlement offer of $15,000. Suber now disputes that she agreed to settle the case, or authorized her attorneys to do so.

       The Court decides here the defendants' motion for

---

[1] On the docket, Troilo is misspelled "Triolo," and there is no first name for this officer. The Court takes the first name and spelling from the Release and Settlement Agreement.

enforcement of the settlement agreement[2] and the plaintiff's attorneys' motion for leave to withdraw as attorneys.  The Court will grant the defendants' motion to enforce the settlement, and deny the plaintiff's attorneys' motion as moot.

I.   Procedural History

Suber filed her complaint against the officers and the Borough on April 30, 2004.  The complaint included claims against the officers under § 1983 for the use of excessive force and failure to provide timely medical attention, and under Pennsylvania state law for assault and battery and negligence.  The complaint also included a claim for respondeat superior liability against the Borough.  All of the claims arose out of incidents surrounding Suber's arrest on November 22, 2003.

On June 20, 2005, the defendants filed a motion for summary judgment.  The motion was granted with respect to all claims against Troilo and the Borough, and otherwise denied, on August 5, 2005.  In addition, the plaintiff voluntarily withdrew her claims of negligence and failure to provide timely medical attention against the officers.

After several continuances, a final pretrial conference

---

[2] Although no claims remain against two of the three defendants, all three defendants move to enforce the settlement, and the Release and Settlement Agreement that they seek to enforce calls for the release of claims against all three defendants.

date of March 7, 2006, and a trial date of March 20, 2006, were set. The final pretrial conference was held.

On March 16, 2006, the defendants filed their motion to enforce the settlement agreement. On March 22, 2006, the plaintiff's attorneys filed their motion for leave to withdraw as attorneys. The Court held a hearing on these motions on March 24, 2006. Suber was present at the hearing.

II.  Facts

   A.  Undisputed Facts

On Tuesday, March 7, 2006, the Court held a final pretrial conference ("FPT"). After the FPT, Suber spoke to her attorneys, Amanda Yarusso and Blake Horwitz. Yarusso told Suber that the Court had ruled against them on several motions in limine at the FPT. Yarusso encouraged Suber to settle the case. Suber said that she needed time to think about it. (Tr. of 3/24/06 Hrg. ("Tr.") at 10-11, 15).

Suber and Yarusso spoke several times over the next few days. On Friday, March 10, 2006, some time after 3:30 P.M., they spoke again. Yarusso again encouraged Suber to settle. The rest of their conversation is disputed, as described below. (Tr. at 12, 17).

Late in the afternoon on March 10, 2006, Yarusso sent a letter to Suber confirming that she had agreed to settle the case

3

for $15,000, and called opposing counsel, Joseph Santarone, Jr., to communicate Suber's acceptance of the defendants' settlement offer.  On March 13, 2006, Santarone faxed a confirming letter to Yarusso.  (Tr. at 4-5, 17).

Also on March 13, Suber spoke to Yarusso again.  Suber expressed that she did not want to settle.  Yarusso said that she had already called opposing counsel and agreed to the settlement.  (Tr. at 12-13).

After receiving telephone calls from Suber, the Court set up a telephone conference with the attorneys for March 14, 2006.  On the call, Yarusso stated that she had had express authority from her client to accept the settlement offer.  (Tr. at 5-6).

B.   Disputed Facts

Suber contends that she was frustrated because earlier in the case, when she wanted to settle, her attorneys encouraged her to go to trial.  After the FPT, they pressured her to settle when she wanted to go to trial.  Suber states that during their conversation on the afternoon of March 10, 2006, after Yarusso encouraged her to settle the case, Yarusso stated that if she wanted to proceed, she would need to find new counsel.  She states that she told Yarusso to "Go ahead and do what you want to do."  She explains that she meant that her attorneys should

4

withdraw if they wanted to do so.  Suber states that she eventually "hung up the phone, because [she] was upset."  (Tr. at 11-12).

Suber states that she tried to call the law office back to clarify that she did not want to settle, but the phones at the law office were broken and she could not get through until two hours later.  By the time she got through, her attorneys had left the office.  She left a message on Yarusso's voicemail indicating that she did not want to settle.  (Tr. at 12).

Yarusso states that during their conversation on the afternoon of March 10, 2006, Suber agreed to settle the case for $15,000.  Yarusso states that she asked Suber if she was sure, and she said yes.  Some time after that, Yarusso sent the confirmation letter to Suber and contacted Santarone to inform him of the acceptance of the settlement offer.  Yarusso states that over the weekend, when she called the office to check her messages, she received a message from Suber indicating that she had changed her mind and no longer wanted to settle.  (Tr. at 17, 19).

Yarusso states that it was only on Monday, after she had received Suber's message indicating that she changed her mind and no longer wanted to settle, that she told Suber that she might have to find new counsel, because she was trying to back out of an enforceable settlement agreement.  (Tr. at 17-18).

III. <u>Analysis</u>

The Court concludes that Suber expressly authorized her attorneys to accept the defendants' settlement offer of $15,000. Therefore, the settlement agreement is enforceable, and the plaintiff's attorneys' motion is moot.

"An agreement to settle a law suit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the court, and even in the absence of a writing. <u>Green v. John H. Lewis & Co.</u>, 436 F.2d 389, 390 (3d Cir. 1970). There is a rebuttable presumption that a settlement entered into by an attorney was authorized by the client. <u>Garabedian v. Allstates Engineering Co.</u>, 811 F.2d 802, 803 (3d Cir. 1987).

"[O]nce the client has authorized the lawyer to settle a case, and the lawyer has done so, the client may not whimsically renege on her promise and refuse to uphold her end of the bargain." <u>Anderson v. United States Postal Serv.</u>, 1998 U.S. Dist. LEXIS 1735 at *3 (Feb. 19, 1998). "The [<u>Green</u>] rule applies to parties who agree to settle and change their mind before signing a written settlement agreement." <u>Bailey v. City of Philadelphia</u>, 2003 U.S. Dist. LEXIS 2195 at *6 (E.D. Pa. Feb. 13, 2003)(<u>aff'd</u>, 90 Fed. App'x 434 (3d Cir. 2004)).

Generally, however, "an attorney has no authority to settle his client's case solely by virtue of his general power to

handle the case.  Instead, an attorney can only enter a binding compromise if the client has authorized him to do so." Garabedian, 811 F.2d 802 at 803 (citations omitted).  "[A]n attorney has to have an express authority to settle a client's claims."  Covington v. Continental General Tire, Inc., 381 F.3d 216, 221 (3d Cir. 2004).  In Covington, 381 F.3d at 220-21, the United States Court of Appeals for the Third Circuit expressly held that apparent authority was not sufficient to render a settlement agreement entered into by an agent enforceable, and that express authority was required.  The court squarely rejected a Pennsylvania Superior Court case that had held otherwise.  Id. (discussing Hannington v. Trustees of the Univ. of Pennsylvania, 809 A.2d 406 (Pa. Super. 2002)).

When the determination of whether an attorney was authorized to enter into a settlement agreement on his client's behalf "hinges upon a factual issue and credibility determinations are involved, a hearing should be held to determine entitlement to relief."  Garabedian, 811 F.2d at 803.

The Court is faced with varying versions of the conversations between Suber and Yarusso that took place on March 10 and 13, 2006.  Because the substance of these conversations is key to the determination of whether the settlement agreement is enforceable, the Court held a hearing on March 24, 2006.

Under Yarusso's version of the facts, it is clear that

Suber expressly authorized Yarusso to settle the case. Once Yarusso communicated the settlement offer to Santarone, the settlement agreement became enforceable, and Suber could not renege on it. If Suber did state on her message to Yarusso that she had "changed her mind," that indicates that she had at one point expressly authorized Yarusso to accept the settlement offer. On the telephone call on March 14, 2006, Yarusso described this sequence of events. At the hearing on March 24, 2006, Yarusso offered a more detailed version of the conversations that occurred.

      The Court will accept Yarusso's version of the events, and finds that Suber expressly authorized Yarusso to settle the case, and then changed her mind, and called back. Although the Court found that all of the parties involved testified credibly at the hearing, the Court finds it illogical that Yarusso would have communicated to Santarone an acceptance that never occurred. Yarusso's version of the events is detailed. She states that she confirmed whether Suber was sure that she wanted to settle, which would have made sense given that she knew that Suber had doubts. Suber admits that she was in an agitated state, and that she "hung up the phone, because [she] was upset." (Tr. at 12). It is difficult to understand why Suber would have called Yarusso back after they had spoken, except to indicate that she had changed her mind. Given the Court's conclusion that Suber

expressly authorized Yarusso to accept the settlement offer, the settlement agreement became enforceable when Yarusso communicated the acceptance to Santarone.

The Court notes that even under Suber's version of the events, the settlement agreement appears to be enforceable. Suber, knowing that Yarusso felt that she should settle the case, told Yarusso to do what she wanted to do. In a sense, then, even under her own version of the events that occurred, Suber expressly authorized Yarusso to settle the case.

The Court recognizes that this case has been emotionally draining for Suber. The Court hopes that she is able to find some closure and comfort in its settlement.

An appropriate Order follows.

```
          IN THE UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF PENNSYLVANIA


SHANIQUA SUBER,                 :     CIVIL ACTION
                                :
          v.                    :
                                :
OFFICER JOSEPH PETERSON,        :
et al.,                         :     NO. 04-1896
```

ORDER

AND NOW, this 2nd day of June, 2006, upon consideration of the defendants' Motion for Enforcement of Settlement Agreement (Docket No. 102), and the Plaintiff's Motion for Leave to Withdraw as Attorneys (Docket No. 105), IT IS HEREBY ORDERED that:

1. The defendants' motion is GRANTED.  Settlement of the claims of the plaintiff, Shaniqua Suber, in the amount of fifteen thousand dollars ($15,000.00) is hereby confirmed.  The defendant shall send to Blake Horwitz the payment of fifteen thousand dollars ($15,000.00) made payable to Shaniqua Suber and Blake Horwitz as her attorney within fourteen (14) days of the date of this order.  Upon receipt of this payment, the plaintiff's attorney shall notify the Court, and this matter shall be settled, discontinued and ended with prejudice in accordance with the terms of the Release and Settlement Agreement included in the Exhibit to the defendant's motion.

2. The plaintiff's attorneys' motion is DENIED AS

MOOT.

                              BY THE COURT:


                              /s/ Mary A. McLaughlin
                              MARY A. McLAUGHLIN, J.